# LOAN HOLDBACK AND
# DISBURSEMENT AGREEMENT

THIS AGREEMENT made this this 30th day of December, 2021, by CABO HOUSTON BORROWER DE LLC, a Delaware limited liability company (hereinafter called "Borrower"), in favor of EMG TRANSFER AGENT LLC, a Delaware limited liability company (hereinafter called "Lender").

**WITNESSETH:**

WHEREAS, on this date, Borrower borrowed from Lender the sum of Sixty Five Million Two Hundred Thousand and No/100 Dollars ($65,200,000.00) (the "Loan") and issued its note to Lender in the principal amount of Sixty Five Million Two Hundred Thousand and No/100 Dollars ($65,200,000.00) of even date herewith (the "Note"; and together with all other documents executed by Borrower in connection with the Loan, the "Loan Documents") in order to acquire that certain property located at 9220 Nathaniel Street, Houston, Texas 77075 (the "Property").

WHEREAS, Borrower has agreed to make certain improvements associated with the Property, as identified in Schedule A attached hereto and made a part hereof (the "Improvements"); and

WHEREAS, in order to induce Lender to make the Loan and any extension and amendments thereto, if any, and to provide Lender with additional security for the completion of the Improvements, Lender shall hold back the sum of Six Million Five Hundred Thousand and 00/100 Dollars ($6,500,000.00) (the "Loan Holdback Amount") from the Loan proceeds.

NOW, THEREFORE, for and in consideration of the premises herein set forth, Borrower agrees as follows:

On the date hereof, the Loan Holdback Amount shall be withheld from the proceeds of the Loan and deposited by Lender into a non-interest bearing account (the "Loan Holdback Account") to be drawn upon a scheduled basis according to a cost breakdown and other conditions to be approved by Lender. Notwithstanding the fact that the Loan Holdback Amount may be deposited by Lender as aforesaid (as opposed to being disbursed to Borrower with the balance of the Loan proceeds), for purposes of calculating interest due under the Note, the entire principal amount of the Loan contemplated by the Note shall be deemed disbursed as of the date of the Note.

Pre-Requisites to Disbursement: Borrower must observe and perform all of the following terms, covenants and conditions, including (as applicable) obtaining at its expense and submitting to Lender for Lender's approval the documents described herein, prior to any

disbursement of the Loan Holdback Amount, and Borrower hereby agrees that TIME SHALL BE OF THE ESSENCE OF EACH AND EVERY ITEM OF BORROWER'S REQUIRED PERFORMANCE OF ALL TERMS AND CONDITIONS HEREIN AND ANY APPROVAL REQUIRED OF LENDER AS TO SUCH ITEM MAY BE WITHHELD IN LENDER'S SOLE DISCRETION:

1. Plans and specifications, prepared by a licensed architect, identifying in detail satisfactory to Lender any proposed Improvements, if applicable, or in the alternative a letter from licensed architect that plans are not required (and in such event, such letter shall be accompanied by other documentation reasonably depicting and describing the proposed Improvements).

2. Copies of all permits required for the construction of proposed Improvements, if applicable, or in the alternative a letter from licensed architect that permits are not required.

3. Certification satisfactory to Lender from the appropriate governmental and/or municipal authorities that all zoning and other municipal approvals have been given for the construction of the proposed Improvements or a letter from a licensed architect that said work complies with all zoning and municipal requirements.

4. Borrower shall provide:

    (a) certification that the construction of the proposed Improvements as shown on plans and specifications are in compliance with all applicable governmental requirements; and

    (b) certification that any and all changes in the approved plans and specifications that may be required by the pertinent governmental authorities will be made; and

    (c) architect's approval that the Lender is authorized in the event of default, with respect to the Loan, to use the approved plans and specifications without cost to the Lender.

5. Copies of the Borrower's contract with the General Contractor, who will supply labor, material and equipment for the construction of the proposed Improvements, if one exists.

6. A complete construction cost breakdown showing the services which the General Contractor will perform and the amounts certified by the Borrower to be due in connection with such services. If Lender, in its sole opinion, shall determine that the undisbursed proceeds of the Loan Holdback Amount will be insufficient to complete all of the proposed Improvements in

accordance with the approved plans and specifications and to pay for all labor, material and costs, Borrower shall, upon Lender's demand, deposit with Lender, at Lender's option, additional monies which shall, when added to the undisbursed proceeds of the Loan Holdback Amount, be sufficient to complete and pay for the Improvements and the costs and expenses in connection therewith. The amount so deposited shall be disbursed to pay for the Improvements before any of the Loan Holdback Amount proceeds of Lender are disbursed. Failure to comply with Lender's demand shall be deemed a default in the loan. IF BORROWER IS THEN IN DEFAULT, LENDER IS NOT REQUIRED TO DISBURSE ANY LOAN HOLDBACK AMOUNT.

7. A projected progress schedule of the construction of the proposed Improvements.

8. Lien waivers, paid receipts or other documentation reasonably sufficient to evidence that the Improvements are free from any liens or claims of any and all persons or entities performing services or labor on the Property or furnishing materials thereto, and free from any liens or claims arising out of or relating to taxes and/or assessments levied against the Property, the Improvements, or any part thereof.

9. Anything to the contrary notwithstanding, it is understood that the Lender shall have the right to inspect the Improvements prior to each advance to determine whether compliance with the terms hereof has been accomplished by the Borrower and that the amount of each requested advance is proper based on the "work-in-place" construction and cost breakdown of the Improvements, and that there have been no material deviations from the approved plans and specifications except as approved in writing by the Lender.

10. As the said work has been completed in a good and workmanlike manner, Borrower shall submit its voucher as to work in place (no more often than every thirty (30) days). Lender, upon satisfactory inspection of such work, agrees to release the vouchered funds by paying the same to Borrower, or any contractor or sub-contractor, or to any of them jointly, as Lender in its sole reasonable discretion may deem best, and Borrower does herewith release the Lender from all liability for the proper payment of any amount.

11. (a) In order to secure the full and punctual payment and performance of all of Borrower's obligations under the Note and the other Loan Documents, Borrower hereby sells, conveys, assigns, pledges, and transfers to Lender and grants Lender a first and continuing lien on and security interest in an to the following property, whether now owned or existing or hereafter acquired or arising and regardless of where located (collectively, the "Cash Collateral"):

(i) all of Borrower's right, title and interest in the Loan Holdback Account and all monies from time to deposited or held in the Loan Holdback Account;

(ii) all interest, dividends, monies and other property from time to time received, receivable or otherwise payable in respect of, or in exchange for any of the foregoing; and

(iii) to the extent not covered by clauses (i) and (ii) above, all proceeds and products of any or all of the foregoing.

This Paragraph 12(a) shall create a continuing pledge of and security interest in the Cash Collateral and shall remain in full force and effect until payment in full of the Loan. The Borrower acknowledges and agrees: (a) that the Loan Holdback Account is subject to the sole dominion, control and direction of Lender, (b) that Lender has a fully perfected, first priority lien on and security interest in such account and the contents thereof, and (c) except as otherwise provided in this Agreement, Borrower shall have no right to close any such account or right of withdrawal with respect to such account except with the written consent of Lender.

(b) If there be any default in the terms and conditions of the Note or the Mortgage (as defined in the Note) before the payment by Lender of any part or all of these funds, the Lender is herewith given the option to terminate the holdback at which time Lender shall be under no obligation to advance funds therefrom, with such funds to be applied as additional security for the Loan.

12. Upon substantial completion of the Improvements, or any other improvements to the Property approved by Lender subject to the terms and conditions herein, and satisfaction of all requirements set forth above with respect to disbursement of the Loan Holdback Amount, any funds remaining in the Loan Holdback Account will be released to Borrower. Borrower shall cause substantial completion to occur with respect to each component of the Improvements (and deliver evidence of such completion to Lender) on or before the expiration of the time period contemplated for the applicable Improvement as set forth in Schedule A hereto. Notwithstanding anything contained in this Agreement to the contrary, it is acknowledged that Lender is funding a portion of the Loan Holdback Amount, in the sum of $500,000.00, to Borrower upon the date hereof (the "Initial Advance"). Such funding of the Initial Advance shall not be deemed a satisfaction of any of the requirements set forth herein for disbursement of the Loan Holdback Amount, and to the extent any such requirements are not satisfied as of the date hereof, Borrower shall promptly comply with such requirements following the date hereof. Without limiting Lender's rights or remedies for failure to comply with any such requirements, Lender may refrain from making any subsequent disbursements until such time as such requirements have been satisfied.

(SIGNATURE PAGE TO FOLLOW)

IN WITNESS WHEREOF, Borrower has executed this Loan Holdback and Disbursement Agreement as of the date first set forth above.

**BORROWER:**

CABO HOUSTON BORROWER DE LLC, a Delaware limited liability company

By: _____
Name: Koteswar Rao Gajavelli
Its: Authorized Signor

## SCHEDULE A

| Item | Description | Totals | Time to Complete |
|---|---|---|---|
| Landscape/Hardscape/Irrigation/Tree Trimming | Landscape upgrades, irrigation repairs & trim trees | $ 95,000 | 12 Months |
| Parking Lot/Concrete Repairs | Parking lot and sidewalk repairs | $ 140,000 | 12 Months |
| Roofing Repairs/Gutters/Downspouts | Fix roofs/install new roofs | $ 900,000 | 12 Months |
| Water Conservation | Implement water conservation at the entire property | $ 650,000 | 12 Months |
| Exterior Repairs | Exterior building repairs to facades | $ 200,000 | 12 Months |
| Site Lighting - Upgrades | Install LED lighting Systems | $ 199,090 | 12 Months |
| Electrical - General Repairs | Misc. electrical repairs as needed with inspection/repair of FPE StabLok circuit breakers | $ 40,000 | 12 Months |
| Plumbing - General Repairs | Misc. plumbing repairs as needed with inspection/repair of galvanized piping | $ 60,000 | 12 Months |
| HVAC - General Repairs | Misc. HVAC repairs as needed | $ 100,000 | 12 Months |
| Leasing/Clubhouse/Fitness | Paint, flooring, 4" base, LED lighting, glass mgr. door | $ 10,000 | 18 Months |
| Playground Improvement | Improve and install new kid's playground | $ 60,000 | 18 Months |

| Carports | Install and Repair carports | $ 150,000 | 12 Months |
|---|---|---|---|
| BBQ | Install BBQ area | $ 37,000 | 18 Months |
| Dog Park | Repair fencing, benches, equipment | $ 50,000 | 18 Months |
| Private backyards | Repair/replace equip, replaster, expand deck, new fencing | $ 190,000 | 12 Months |
| Signage | Monument, building and unit numbers | $ 25,000 | 12 Months |
| Interior Renovations of 600 Units | Install new vinyl flooring, appliances, fixtures, paint, misc | $ 3,000,000 | 18 Months |
| Fire Extinguisher Inspection | Fire extinguisher inspections have expired or were not available. The systems should be inspected, and documentary evidence provided immediately as a life safety issue. | $ 3,001 | 2 Months |
| Contingency | | $ 590,909 | |
| Total | | $ 6,500,000 | |